STAIGER *v.* STATE.

[70 South. 690.]

HOMICIDE. *Character of offense. Killing in heat of passion. Instructions.*

When on a trial for homicide, there was no testimony upon which a verdict of murder should stand, but the uncontradicted facts show that the killing was done in the heat of passion, it was error for the court to give the state any instructions as to murder.

APPEAL from the circuit court of Forest county.
HON. J. M. ARNOLD, Judge.
Joseph Staiger was convicted of murder and appeals.

*S. E. Travis* and *E. A. Anderson* and *Stone Deavours,* for appellant.

*Ross A. Collins,* Attorney-General, for the state.

SYKES, J., delivered the opinion of the court.

The appellant, Joseph Staiger, was convicted of the murder of one A. P. Miller, in the circuit court of Forest county, and prosecutes this appeal. The material facts upon which the state relied for a conviction are in substance as follows: About a month before the killing the appellant, Staiger, told his wife of certain derogatory remarks alleged to have been made to him by the deceased about one Mrs. Armbrecht. Mrs. Staiger repeated these remarks to Mrs. Armbrecht; and Mrs. Armbrecht told her husband of them. On the day of the killing, to wit, May 27, 1914, Mr. Armbrecht, shortly after the noon hour, called at the home of the appellant and asked him whether or not it was true that Miller had made these remarks, and when. Appellant told him that it was true, and stated the time, place, and all the circumstances under which they were made. Armbrecht, from appellant's home, then telephoned Mr. Miller, asking that Miller meet him in his (Armbrecht's) office at once. Miller was a bookkeeper, and in the morning kept the books of Armbrecht, who was in the lumber business, and in the afternoon worked for a drug store there in the city of Hattiesburg. Armbrecht had two offices on the second floor of the Ross Building, one of which was occupied by the bookkeeper and stenographer, and the other was his private office. Appellant, Staiger, was in the insurance business, and had his offices on the third floor of the same building. In the course of the conversation between Staiger and Armbrecht at Staiger's house Armbrecht told Staiger that he intended to discharge Miller. Some days before the killing appellant's wife had gone to Kansas city; and on the day in question appellant was pack-

ing up preparatory to breaking up housekeeping, and intending to leave Hattiesburg that day to join his wife. The testimony of appellant, which is not contradicted, is that about a year previous to the difficulty he had purchased a pistol which he kept in his home; and on the day of the killing he put the pistol in his trousers pocket, intending to take it down to his office and give it to his stenographer to raffle off along with a shotgun which the stenographer intended to raffle; that this was done before his conversation with Mr. Armbrecht. Shortly after Armbrecht left he telephoned to Staiger, from his office, that Miller was there and denied making the statement, and he (Armbrecht) requested that Staiger come by his office that afternoon. To this Staiger replied that he would call at Armbrecht's office. Armbrecht testified that within a short time after this conversation Staiger came into his office; that at this time Mr. Miller had left the private office of Armbrecht and was in the front office, occupied by the stenographer, and by Miller during the mornings; that as soon as Staiger came he (Armbrecht) called Miller back in the office; that Miller came back, shut the door, and stated he did not make the statements, and that Staiger stated that he had, and called Miller a liar; that Miller reiterated he did not make the statements, and upon his part called Staiger a liar. According to Armbrecht:

The lie was passed back and forth several times, until finally the defendant stated to the deceased: " 'You are larger than I am, Mr. Miller, but I am not afraid of you. You have called me a liar several times.' And Mr. Miller then said, 'You are a liar;' and Mr. Staiger said. 'You are a crook;' and Mr. Miller hit him.''

Armbrecht said he saw Miller hit Staiger twice, knocking him either to the floor or back in a chair, and that Miller fell on top of the appellant. At this time the defendant shot one time, the bullet striking Miller in the forehead, from which wound he became unconscious almost immediately, and died within a short time thereafter.

Armbrecht did not see the defendant strike or attempt to strike the deceased. All testimony shows that the deceased, Miller, weighed about one hundred and eighty or one hundred and ninety pounds, and was a man of great muscular development, and that the defendant weighed about one hundred and forty pounds, and was in no sense the equal, physically, of the deceased. The testimony further shows that there were several very bad bruises sustained by the defendant in the fight, and that the deceased was on 'top of and beating the defendant at the time of the killing. There were no eyewitnesses present at the time of the killing save Armbrecht and the defendant. The defendant testified that, when the deceased knocked him down into a chair, he (deceased) reached for a portable telephone instrument, and it was then that defendant, believing that his life was in danger, pulled his pistol from his pocket and shot the deceased. The defendant contradicted Armbrecht as to some of the details of the quarrel leading up to the tragedy; but, under our view of the case, we are stating the facts most strongly for the state.

The theory of the state in this case is that the defendant armed himself with a deadly weapon for the purpose of looking up the deceased to provoke a difficulty with him and kill him. This is shown by the following instruction given for the state:

"The court instructs the jury for the state that, if the jury is fully satisfied from the evidence beyond all reasonable doubt and from all the evidence in this case that the accused was looking for Miller to kill him, armed with a deadly weapon provided for that purpose, and that when he found the deceased he provoked a difficulty with him, or was the aggressor in the difficulty in which he killed the deceased, then he is guilty of murder, even though he killed the deceasd in self-defense, and the jury shall so find; and this is true no matter how great the physical difference was between the size of defendant and deceased."

The state was given two other instructions embodying this same theory.

This was error, There is no testimony in this case upon which a verdict of murder should stand. The uncontradicted facts show that the killing was done in the heat of passion; whether in self-defense or not is a question to be decided by the jury. We therefore hold that the court erred in giving the state any instructions as to murder.

For these reasons, the case is reversed and remanded.

*Reversed and remanded.*